**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
District of New Jersey

In re: Jonathan Bombart,    Case No. 25-17903 (JKS)
    Chapter No. 11

    Debtor

## SUBPOENA FOR RULE 2004 EXAMINATION

To: Jonathan Bombart
    *(Name of person to whom the subpoena is directed)*

Address:  33 Woodens Lane
    Lambertville, NJ 08530

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the place, date, and time set forth below to testify at an examination under Rule 2004 of the Federal Rules of Bankruptcy Procedure and Rule 2004-1 of the Local Rules of Bankruptcy Procedure.

| PLACE | DATE AND TIME |
|---|---|
| Gutfleish Law, LLC **or by video conferencing** <br> One University Plaza, Suite 208 <br> Hackensack, NJ 07601 | October 21, 2025 <br> 10:00 a.m. |

The examination will be recorded by a court reporter authorized by law to administer oaths.

☒ *Production:* You, or your representatives, must produce the documents requested in Exhibit A at the place and date set forth below.

| PLACE | DATE |
|---|---|
| Gutfleish Law, LLC <br> One University Plaza, Suite 208 <br> Hackensack, NJ 07601 | October 8, 2025 |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

| | |
|---|---|
| Dated: September 23 2025 <br><br> *[signature]* <br> Harry M. Gutfleish, Esq. | Issuer: <br> Gutfleish Law, LLC <br> One University Plaza, Suite 208 <br> Hackensack, NJ 07601 <br> *Attorneys for Sonia Bombart* |

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)*_____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)*_____; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $_____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

...

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# EXHIBIT A TO RULE 2004 EXAMINATION SUBPOENA
# JONATHAN BOMBART

## DEFINITIONS

In addition to the definitions set forth elsewhere herein, the following defined terms have the meanings set forth.

"**Communication**" means any transmission of words or thoughts between or among two or more persons, including without limitation spoken words, discussion, conference, conversation, negotiation, agreement, understanding, inquiry, promise, complaint, correspondence, or other forms of intercourse, whether oral or written, whether transmitted in person, by ESI or by any other means, including radio or telephonic devices.

"**Document**" means all Communications as well as written as all printed or stored data of any kind, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and includes without limitation, correspondence, memoranda, notes, diaries, letters, emails, telegrams, telexes, teletypes, facsimiles, telecopies, minutes, agendas, contracts, reports, studies, surveys, statements, receipts, returns, summaries, pamphlets, books, graphs, charts, prospectuses, bulletins, printed matter, computer printouts and records, invoices, work sheets, accountant's notes, work papers, microfiche, microfilm, video tapes, audio tapes, records, CD roms, video disks, audio disks, data disks, motion pictures and all other data compilations from which information can be obtained, translated, downloaded, copied, viewed, transcribed or printed, together with all drafts, alterations, modifications, changes and amendments to or of any of the foregoing.

"**Mortgage**" means the mortgage attached hereto.

"**Property**" means 38 Woodens Lane, Lambertville, New Jersey.

"**Statement**" means a written statement signed or otherwise adopted or approved by the person making it, and a stenographic, mechanical, electrical or other recording, or a transcription thereof, which is a substantially verbatim recital of the written or oral statement by the person making it.

"**You**", "**you**" or "**your**" means Jonathan Bombart, the debtor in the above captioned bankruptcy case and the person to whom this subpoena is directed.

## INSTRUCTIONS

A.  If any documents requested are within the possession, custody or control of your agents, employees, attorneys, representatives, or any other person over which you have control, or you have a right of possession or production over any documents requested, you are required to produce such documents. If any requested document was, but is no longer, in your possession or subject to your control, state what disposition was made of the document and, if the document is still in existence, identify the person who has possession or control of such document.

1

B. You are required to produce the documents requested (a) as they are kept in the usual course of business or (b) label documents produced to correspond to the request for which such documents are being produced.

C. If you do not comply completely with any request for production of documents upon an asserted ground of any privilege or otherwise, you are required to provide the following information with respect to each withheld document:

(i) A description of the document, including the author or authors, the addressee, title of the document, the date it was created, its present location, the identity of its custodian, and the subject or subjects of the document.

(ii) All grounds upon which production is declined; and

(iii) If any privilege is asserted, (a) identify all privileges claimed and all holders thereof, (b) set forth all facts necessary or material for the Court to rule upon the assertion of privilege, and (c) provide a statement identifying all persons who have seen the document, and the positions and capacities of all addressees.

## **DOCUMENTS TO BE PRODUCED**

1. All Documents evidencing, referring or relating to your acquisition of the Property.

2. All Documents evidencing, referring or relating to the source(s) of funds used to acquire the Property.

3. All title reports issued in connection with your acquisition of the Property.

4. Any closing package prepared in connection with your acquisition of the Property.

5. All Documents evidencing, referring or relating to the disbursement of funds and escrows established in connection with your acquisition of the Property.

6. All closing statements prepared in connection with your acquisition of the Property.

7. All documents evidencing, referring or relating to any person or entity that is holding funds to which you are entitled or to which you have claim.

8. All Documents evidencing, referring or relating to all loans that Gregory Wasser made to you since January 1, 2021.

9. All Documents evidencing, referring or relating to all funds that Gregory Wasser paid, remitted or transferred to you since January 1, 2021.

10. All Documents evidencing, referring or relating to all funds that you paid, remitted or transferred to Gregory Wasser since January 1, 2021.

11. All Documents evidencing, referring or relating to your transfer of any asset to Gregory Wasser since January 1, 2021.

12. All Documents evidencing, referring or relating to the Mortgage.

13. All Documents evidencing, referring or relating to all agreements between you and Gregory Wasser relating to the Mortgage.

14. All promissory notes executed by you to Gregory Wasser in connection with the Mortgage.

15. All Documents evidencing, referring or relating to all consideration that Gregory Wasser provided to you in exchange for the Mortgage.

16. All Documents evidencing, referring or relating to the funding of all loans made by Gregory Wasser to you in connection with the Mortgage.

17. All Documents evidencing, referring or relating to all transfers that Gregory Wasser made to you in connection with the Mortgage.

18. All Documents evidencing, referring or relating to all debts that are secured by the Mortgage.

19. All Communications between you and Gregory Wasser relating to the Mortgage.

20. All Documents evidencing, referring or relating to any payments made by you to Gregory Wasser in connection with the alleged debt set forth in the Mortgage.

21. All amortization schedules that you prepared, or that were prepared on your behalf, relating to the Mortgage.

22. All Documents evidencing, referring or relating to agreement under which Gregory Wasser agreed that you could defer payments due under the Mortgage.

23. All Documents evidencing, referring or relating to any agreement under which Gregory Wasser waived the alleged debt set forth in the Mortgage or any portion thereof.

24. All Documents evidencing, referring or relating to investments, interests, sales, and claims set forth in response to question 33 of Schedule B that you filed with the Bankruptcy Court [Docket Number 23, Page 16 of 86].

25. All Documents evidencing, referring or relating to any interest that you held or hold in Indian Creek Lofts, the nature of such interest, the status of such interest, the transfer of such

3

interest or any portion thereof, or any consideration received for such interest or any portion thereof.

26. All Documents evidencing, referring or relating to any interest that you held or hold in Digs on 3rd LLC, the nature of such interest, the status of such interest, the transfer of such interest or any portion thereof, or any consideration received for such interest or any portion thereof.

27. All Documents evidencing, referring or relating to any interest that you held or hold in JM Holdings, the nature of such interest, the status of such interest, the transfer of such interest or any portion thereof, or any consideration received for such interest or any portion thereof.

28. All Documents evidencing, referring or relating to any interest that you held or hold in 25 East Salem LLC, the nature of such interest, the status of such interest, the transfer of such interest or any portion thereof, or any consideration received for such interest or any portion thereof.

29. All Documents evidencing, referring or relating to any interest that you held or hold in Folts Care LLC, the nature of such interest, the status of such interest, the transfer of such interest or any portion thereof, or any consideration received for such interest or any portion thereof.

30. All Documents evidencing, referring or relating to any interest that you held or hold in Oasis Living Quarters, the nature of such interest, the status of such interest, the transfer of such interest or any portion thereof, or any consideration received for such interest or any portion thereof.

31. All Documents evidencing, referring or relating to any interest that you held or hold in Indian Creek Lofts, the nature of such interest, the status of such interest, the transfer of such interest or any portion thereof, or any consideration received for such interest or any portion thereof.

32. All Documents evidencing, referring or relating to any interest that you held or hold in each entity set forth in response to question 19 of Schedule B that you filed with the Bankruptcy Court [Docket Number 23, Pages 13 and 19 of 86].

33. All Documents evidencing, referring or relating to the assets currently owned by any each entity identified in response to question 19 of Schedule B that you filed with the Bankruptcy Court [Docket Number 23, Pages 13 and 19 of 86].

34. All Documents evidencing, referring or relating to the transfer of any asset owned by each entity identified in response to question 19 of Schedule B that you filed with the Bankruptcy Court [Docket Number 23, Pages 13 and 19 of 86] since January 1, 2021.

35. All home and personal property insurance policies issued to you since January 1, 2021.

36. All applications that you submitted to any insurance company or agent since January 1, 2021.

37. All applications that you submitted to any person or entity in connection with a loan that you have sought since January 1, 2021.

38. All financial statements that you provided to any person or entity since January 1, 2021.

39. All Documents evidencing, referring or relating to any interest that you held in Blue Water Adventures LLC, the nature of such interest, the status of such interest, the transfer of such interest or any portion thereof, or any consideration received for such interest or any portion thereof.

40. All Documents evidencing, referring or relating to all assets owned by Blue Water Adventures, LLC and the value thereof.

41. All Documents evidencing, referring or relating to all insurance policies issued to Blue Water Adventures, LLC since January 1, 2021.

42. All Documents evidencing, referring or relating to any interest that you held in Grey Horse Equities, LLC, the nature of such interest, the status of such interest, the transfer of such interest or any portion thereof, or any consideration received for such interest or any portion thereof.

43. All Documents evidencing, referring or relating to all assets owned by Grey Horse Equities, LLC.

44. All Documents evidencing, referring or relating to all insurance policies issued to Grey Horse Equities, LLC since January 1, 2021.

45. All Documents evidencing, referring or relating to $2,500.00 expense set forth in response to question 4 of Schedule J that you filed with the Bankruptcy Court [Docket Number 23, Page 62 of 86].

46. All documents evidencing, referring or relating to any ownership interest that you have held in any entity from January 1, 2021 through the present.

47. All tax returns and supporting documents that you filed with any taxing authority for calendar years 2021 through the present.

48. All tax returns and supporting documents that any entity in which you held an ownership interest filed with any taxing authority for calendar years 2021 through the present.

49. All bank statements, including but not limited to copies of all deposit slips, deposited items, cancelled checks and wire confirmation receipts, with respect to any bank or investment accounts maintained by you from January 1, 2021 through the present.

50. All W-2, Form 1099 and K-1 statements issued to you for calendar years 2021 through the present.

51. All documents evidencing your lease or ownership of any real property.

52. All documents evidencing, referring or relating to all salary or equity distributions that you received since January 1, 2021.

53. All documents evidencing, referring or relating to your transfer of any asset to any person or entity since January 1, 2021 having a value of more than $5,000.

54. All documents evidencing the existence of any 401-K Plan, Keogh Plan, Profit Sharing Plan, Pension Plan, IRA, Roth IRA or any other retirement account established for your benefit together with the most recent account statements issued with respect thereto.

55. All documents evidencing, referring or relating to all investment accounts maintained by you since January 1, 2021, together with all statements with respect thereto.

56. All insurance policies, including all riders thereto, under which you are the insured or a beneficiary.

57. All documents evidencing, referring or relating to all insurance policies that you have purchased.

58. All credit card or debit card statements received by you since January 1, 2021.

59. All documents evidencing, referring or relating to the sources of funds used to pay the expenses reflected in Schedule J that you filed with the Bankruptcy Court [Docket Number 23, Pages 62-64 of 86].

60. All financial statements, balance sheets, and profit and loss statements, prepared by or on behalf of any entity in which you held or hold an ownership interest since January 1, 2021.

RECEIVED:            NO. 8586            06/26/2025/THU 11:50AM

| | |
|---|---|
| **Hunterdon County Recording Data Page**<br>**Honorable Mary H. Melfi**<br>**Hunterdon County Clerk** | *Official Use Only — Barcode*<br><br>20250312000044490   1/6<br>03/12/2025 02:01:59 PM  M<br>Bk: 4617 Pg: 23<br>Mary H. Melfi<br>Hunterdon County Clerk |
| *Official Use Only — Realty Transfer Fee* | Record and Return Address:<br><br>Kenneth P. Glynn, Esq.<br>84 Park Avenue, Suite G105<br>Flemington, NJ 08822 |
| Date of Document:<br>**July 13, 2023** | Type of Document:<br>**Mortgage** |
| Party Name:<br>**Jonathan Bombart** | Party Name:<br>**Gregory Wasser** |
| Additional Parties: | |

**THE FOLLOWING SECTION IS REQUIRED (DEEDS MANDATED)**

| | |
|---|---|
| Block: | Lot: |
| Municipality: | |
| Consideration: | |
| Mailing Address of Grantee: | |

**THE FOLLOWING SECTION IS FOR MARGINAL NOTATIONS**
**THAT PERTAIN TO THE ORIGINAL FILED/RECORDED DOCUMENT**

| | |
|---|---|
| Original Book & Page: | Original Instrument Number: |

**HUNTERDON COUNTY RECORDING DATA PAGE**

Please do not detach this page from the original document as it contains important recording information and is part of the permanent record.

06/26/2025 12:09PM FAX 9082370195         HUNTERDON CO CLERK         ☑0003/0008

Record and Return to:
Kenneth P. Glynn, Esq.
Glynn Law LLC
84 Park Avenue, Suite G-105
Flemington, NJ 08822

# MORTGAGE

This Mortgage, made the 13th day of July 2023,

Between Jonathan Bombart

residing at 38 Woodens Lane, Lambertville, New Jersey 08530 in the city of Lambertville and the State of New Jersey, hereinafter designated as the Mortgagors,

And

Gregory Wasser

residing or located at 211 East 43rd Street, New York, New York 10017 in the city of New York City and State of New York, hereinafter designated as the Mortgagee;

Whereas, the said Mortgagors are justly indebted to said Mortgagee, in the sum of ONE MILLION 00/100 Dollars ($1,000,000.00), lawful money of the United States of America, to be paid according to Mortgagors' certain Bond or obligation in the like sum and bearing even date with these presents (the terms, covenants and conditions of which are made a part hereof) and conditioned for the payment of the said sum, lawful money as aforesaid, to the said Mortgagee, on July 13, 2033, and interest thereon, to be computed from July 13, 2023, at and after the rate of 3 per cent per year, payable in the following manner: Monthly payments based on a standard five year mortgage schedule, interest and principal payments.

And the said Mortgagors do covenant and agree to pay unto the said Mortgagee, the said sum of money and interest, as mentioned above and expressed in the said Bond or other obligation.

And it is hereby expressly agreed that should any default be made in the payment of the said interest and/or principal or of any part thereof, on any day whereon the same is made payable as herein expressed, or should any tax, assessment, water rent or other municipal or governmental rate, charge, imposition or lien, now or hereafter imposed or acquired upon the premises described in this Mortgage, be or become due and payable, and should the said interest and/or principal or any part thereafter remain unpaid and in arrears for the space of fifteen (15) days, or said tax, assessment, water rent or other municipal or governmental rate, charge, imposition or lien, or any of them, remain unpaid and in arrears for space of fifteen (15) days, then and from thenceforth, that is to say, after the lapse or expiration of either of the said periods, as the case may be, or should there occur any default by the Mortgagors, in the performance of

1

any other terms, covenants and conditions herein contained, the aforementioned principal sum together with interest and all arrearages of interest thereon, shall, at the option of the said Mortgagee, become and be due and payable immediately thereafter, although the period herein limited for the payment thereof may not then have expired, anything herein contained to the contrary notwithstanding. The said Mortgagee may, at Mortgagee's option, pay such tax, assessment, water rent or other municipal or governmental rate, charge, imposition or lien, in arrears, and the amount so paid shall be added to and become part of the principal sum evidenced by said Bond or other obligations and secured by this Mortgage, and shall be payable on demand, with interest at 3%, per year, from the time of such payments.

Now this Indenture Witnesseth, that the said Mortgagors, for better securing the payment of the said sum of money mentioned in the condition of the said Bond or obligation, with interest thereon, and the performance by them of the terms, covenants and conditions herein contained, according to the true intent and meaning thereof, and also for and in consideration of the sum of one dollar to the Mortgagors in hand paid by the said Mortgagee at or before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, aliened, released, conveyed and confirmed, and by these presents do grant, bargain, sell, alien, release, convey and confirm unto the said Mortgagee, forever,

All that tract or parcel of land and premises, hereinafter particularly described, situate, lying and being in the Township of West Amwell in the County of Hunterdon and State of New Jersey, also known as Lot 15.02 & 15.02 Q0022, Block 30, Township West Amwell, Hunterdon County, New Jersey, having a mailing address of 38 Woodens Lane, Lambertville, New Jersey 08530, also the same lands described in the legal description attached hereto as Exhibit A.

Together with all and singular the buildings, improvements, ways, woods, waters, watercourses, rights, liberties, privileges, hereditaments and appurtenances to the same belonging or in anywise appertaining; and the reversion and reversions and remainders, rents, issues and profits thereof, and of every part and parcel thereof.

And also all the estates, right, title, interest, use, possession, property, claim and demand whatsoever, of the said Mortgagors both in law and in equity, of, in and to the premises herein described, and every part and parcel thereof, with the appurtenances.

To have and to hold all and singular, the premises herein described, together with the appurtenances, unto the said Mortgagee and to Mortgagee's proper use and benefit forever.

And the said Mortgagors do covenant with the said Mortgagee that Mortgagors are seized of an indefeasible estate in fee simple in said premises, and will warrant and forever defend the title thereto unto the Mortgagee, against all lawful claims whatsoever.

Provided always, and these presents are upon this express conditions, that if the said Mortgagors shall well and truly pay unto the said Mortgagee, the said sum of money mentioned in the said Bond or obligation, and the interest thereon, at the time and times and in the manner mentioned in the said Bond or obligation, according to the true intent and meaning thereof, then these presents and the estate hereby granted, shall cease, terminate and be void.

And the said Mortgagors, the owners of the land above described, do further covenant and agree to and with the said Mortgagee, that the said Mortgagors will pay in full, all taxes levied or to be levied upon the lands embraced in this Mortgage, and will not claim any credit on or make any deduction from the interest or principal hereby secured, by reason of the payment of any taxes so levied or to be levied during the continuance of the lien of this Mortgage; and upon the breach of this covenant or any part thereof, this Mortgage may become and be due and payable immediately, at the option of the said Mortgagee

And it is also Agreed, that the said Mortgagors shall and will keep the buildings and improvements now on said premises or which may hereafter be erected thereon, insured against loss or damage against fire and other hazards in an amount equal to said indebted amounts as maximum appraised value if less than said indebted amount by insurers and in an amount approved by the said Mortgagee, and will assign the policy and certificates thereof to the said Mortgagee; and in default thereof, it shall be lawful for the said Mortgagee to effect such insurance, and the premiums paid for effecting the same shall be a lien on the said mortgaged premises, added to the principal sum secured hereby, and shall be payable on demand, with interest at the rate of 7.0% per year, from the time of payment of such premiums.

And the said Mortgagors shall and will keep the buildings and improvements now on said premises or which may hereafter be erected thereon, in good and substantial repair. Failure so to do shall be a default in the terms and conditions of this Mortgage and the Bond or other obligation accompanying same. It shall be lawful for the Mortgagee, upon such default, to enter upon said premises and repair and keep the same in good and substantial repair; and the cost and expense thereof shall be a lien on the said mortgaged premises, added to the principal sum secured hereby, and shall be payable on demand together with interest at the rate of 7.0%, per year from the time of payment of such costs and expenses.

And said Mortgagors agree that if default shall be made in any of the aforesaid covenants or conditions, then, in addition to all rights, remedies and recourses permitted by law, the said Mortgagee shall have the right forthwith, after any such default, to enter upon and take possession of the said mortgaged premises, and to let the said premises, and receive the rents, issues and profits thereof, and to apply the same, after payment of all necessary charges and expenses, on account of the amount hereby secured; and said rents and profits are, in the event of any such default, hereby assigned to the said Mortgagee; and the said Mortgagee shall also be at liberty immediately after any such default, upon proceedings being commenced for the foreclosure of this Mortgage, to apply for the appointment of a receiver of the rents and profits of the said premises, and be entitled to the appointment of such receiver as a matter of right, as security for the amounts due the said Mortgagee, without consideration of the value of the mortgaged premises or solvency of any person or persons liable for the payment of such amounts.

Failure of the Mortgagee, in any one or more instances, to insist upon strict performance by the Mortgagors of any terms, covenants or conditions of this Mortgage, or to exercise any option or election herein conferred, shall not be deemed to be a waiver or relinquishment for the future of any such terms, covenants, conditions, elections or options.

3

RECEIVED:                        NO. 8586                06/26/2025/THU 11:50AM

Wherever in this instrument any party shall be designated or referred to by name or general reference, such designation is intended to and shall have the same effect as if the words "heirs, executors, administrators, personal or legal representatives, successors and assigns" had been inserted after each and every such designation. All the terms, covenants and conditions herein contained shall be for and shall inure to the benefit of and shall bind the respective parties hereto, and their heirs, executors, administrators, personal or legal representatives, successors and assigns, respectively.

In all references herein to any parties, persons, entities or corporations, the use of any particular gender or plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.

The Mortgagee acknowledges and shall allow Mortgagor to transfer Deed to a Limited Liability Company, but said Mortgagor shall continue to be liable for the underlying debt.

In Witness Whereof, the said Mortgagors have hereunto set their hands and seals the day and year first above written.

WE HEREBY DECLARE AND ACKNOWLEDGE THAT WE HAVE RECEIVED, WITHOUT CHARGE, A TRUE COPY OF THIS MORTGAGE.

Signed, sealed and Delivered
in the presence of

_____          _____
                                   Jonathan Bombart, Mortgagor

State of New Jersey, County of Hunterdon    } ss.: Be it Remembered, that on
July 13, 2023    20 23, before me, the subscriber,    personally
appeared Jonathan Bombart

who, I am satisfied,    is    the person    named in and who executed the within Instrument, and thereupon    he    acknowledged that    he    signed, sealed and delivered the same as    act and deed, for the uses and purposes therein expressed.

_____
KENNETH P. GLYNN, ESQ.
ATTORNEY AT LAW
STATE OF NEW JERSEY

4

06/26/2025 12:10PM FAX 9082870185        HUNTERDON CO CLERK        ☑0007/0008

EXHIBIT "A"

LEGAL DESCRIPTION

ALL THAT CERTAIN tract or parcel of land and premises lying, being and situate in West Amwell Township, Hunterdon County, and State of New Jersey being more particularly described as follows:

BEGINNING at a point corner in the public road known locally as Wooden's Lane, corner to Lot 15.01 in this subdivision; and running

(1) Along Lot 15.01, North 64 degrees 25 minutes 25 seconds East, a distance of 850.75 feet to a point for a corner to same; thence

(2) Along the same, North 67 degrees 48 minutes 07 seconds East, a distance of 680.00 feet to a point for a corner to same; thence

(3) Along the same, North 74 degrees 00 minutes 00 seconds East, a distance of 487.00 feet to a point for a corner to the same, in line of land of Peter Mazur, Lot 14; thence

(4) Along Lot 14, South 06 degrees 06 minutes 17 seconds East, a distance of 432.04 feet to a point for a corner in line of the same, corner to Lot 15, land remaining in this subdivision; thence

(5) Along land remaining, South 65 degrees 12 minutes 54 seconds West a distance of 880.31 feet to a point for a corner to same; thence

(6) Along the same, South 86 degrees 08 minutes 13 seconds West, a distance of 358.09 feet to a point for a corner to the same; thence

(7) Along the same, South 73 degrees 17 minutes 22 seconds West, a distance of 261.58 feet to a point for a corner to the same; thence

(8) Still along the same, South 16 degrees 15 minutes 48 seconds West, a distance of 263.34 feet to a point for a corner to the same, in the aforementioned Wooden's Lane; thence

(9) Along said Wooden's Lane, on a curve to the right with a radius of 4,000.00 feet, a central angle of 03 degrees 08 minutes 29 seconds, an arc distance of 219.30 feet on a chord which bears North 72 degrees 58 minutes 27 seconds West, a distance of 219.28 feet to a point for a corner in the same; thence

(10) Along the same, on a curve to the right with a radius of 200.00 feet, a central angle of 46 degrees 35 minutes 24 seconds, an arc distance of 162.63 feet, on a chord which bears North 48 degrees 06 minutes 18 seconds West, a distance of 158.19 feet to a point for a corner in the same; thence

(11) Along the same, North 24 degrees 48 minutes 33 seconds West, a distance of 245.13 feet to the place of BEGINNING.

20250312000044490    6/6
03/12/2025 02:01:59 PM M
Recording Fee: $80.00
Tax Fee: $.00
Consideration: $.00
Buyers Fee: $.00
MA81